UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FREDIA ROBERTSON, AS GUARDIAN FOR MARY
KATHERINE HART,

                                Plaintiff,

                                                                                       Case # 16-CV-289-FPG

v.

                                                                                       DECISION AND ORDER

METLIFE SECURITIES, INC., et al.,

                                Defendants.

## INTRODUCTION

On April 14, 2016, Plaintiff Fredia Robertson filed a Complaint against Defendants[1] on behalf of Mary Katherine Hart alleging one federal-law claim under a section of the Securities Exchange Act, 15 U.S.C. § 78j(b) and enacted under 17 C.F.R. 240.10b-5 ("Rule 10b-5"), and seven state-law claims all alleging that Defendants operated a scheme to defraud Hart. *See* ECF No. 1. Specifically, Plaintiff alleged the following eight claims: (1) Phillips and the Merritts forged a power of attorney giving the Merritts authority to act as agents for Hart on October 29, 2010; (2) Phillips and the Merritts forged another power of attorney giving the Merritts authority to act as agents for Hart on July 30, 2010; (3) Xerox stole money from Hart's 401(k) and pension plan; (4) the Merritts and Xceed FCU stole money out of Hart's accounts at Xceed FCU; (5) the MetLife Defendants and the Merritts stole Hart's money from her retirement accounts; (6) the MetLife Defendants and the Merritts violated 15 U.S.C. § 78j(b) and Rule 10b-5 by transferring Hart's pension into a MetLife annuity; (7) the MetLife Defendants and the Merritts violated New York

---

[1] MetLife Securities, Inc., Metropolitan Life Insurance Company, MetLife of Upstate New York, Charlie Williams, Jr. (collectively, the "MetLife Defendants"), Markia L. Merritt, Debbie Merritt, (collectively, the "Merritts") Xerox Corporation, Xceed Financial Credit Union, WoodForest National Bank, and Verna D. Phillips.

State securities laws; and (8) the MetLife Defendants, the Merritts, WoodForest, and Phillips stole money from Hart's WoodForest account. ECF No. 1.

On May 31, 2016, and February 1, 2017, Plaintiff withdrew claims against Xerox and Xceed FCU, respectively. ECF Nos. 4, 29. Consequently, both Defendants were dismissed from the case. *Id.*

The remaining Defendants, except the Merritts,[2] moved to dismiss the Complaint at various times: Phillips on May 31, 2016; the MetLife Defendants on July 12, 2016; and WoodForest on September 23, 2016. ECF Nos. 5, 17, 24. The Motions to Dismiss are currently before the Court. For the reasons stated, the MetLife Defendants' Motion to Dismiss the Complaint, is GRANTED, the Complaint is DISMISSED, and the Motions to Dismiss for Phillips and WoodForest are DENIED AS MOOT.

**BACKGROUND[3]**

On October 23, 2010, Mary Katherine Hart suffered a major stroke that permanently altered her mental functions. On July 13, 2013, Plaintiff, Hart's sister, was appointed as Hart's temporary guardian, and then appointed as her permanent guardian on May 27, 2014. Before her stroke, Hart worked for nearly forty years as a machinist for Xerox. Over that time, she accumulated a pension worth $609,659.80 as of April 25, 2011, and a 401(k) worth approximately $194,880.65.

On October 29, 2010, the Merritts forged a power of attorney naming them and Plaintiff as agents for Hart. Phillips notarized the power of attorney. Debbie Merritt is Hart's longtime friend, and Markia Merritt is Debbie Merritt's daughter and Hart's goddaughter.

---

[2] The Merritts have not yet appeared in this action. *See* ECF No. 30. Additionally, the Court issued an Order to Show Cause to which Plaintiff responded. ECF Nos. 30, 38. The Court has not issued a Decision and Order considering Plaintiff's response and will not do so since the case is dismissed.

[3] The Court takes the following allegations from the Complaint, ECF No. 1, and accepts them as true to evaluate Defendants' Motions to Dismiss. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

On or about April 18, 2011, the Merritts met with Charlie Williams, Jr., a registered representative of MetLife Securities, Inc., licensed to sell securities. The Merritts used the power of attorney to establish an annuity with MetLife Securities, Inc. ("MSI"). Specifically, Hart's Xerox pension, then valued at $598,350.32, was transferred into an MSI annuity. While filling out documents to establish the MSI annuity, Williams and the Merritts made false statements regarding Hart's current annual income, liquid net worth, risk of tolerance of the contract, the face value of her life insurance holdings, the replacement of an existing annuity contract, the income objective of the contract, the primary purpose of the contract, and when Hart would take a disbursement from the annuity.

Williams knew the annuity was not a suitable investment for Hart. He allowed the Merritts to establish the annuity on behalf of Hart to receive commissions and to defraud Hart. At no time did Hart approve the annuity or the transfer of money from her pension.

Plaintiff alleges that the actions of Williams and the Merritts, and their false statements on documents used to establish the annuity, constituted manipulative and deceptive devices and contrivances in violation of Rule 10b-5. Specifically, the actions and false statements formed a device, scheme, or artifice to defraud Hart by purchasing securities. Moreover, Williams's actions constituted a course of business which operated as a fraud and deceit upon Hart.

Finally, Defendants MetLife Securities, Inc., Metropolitan Life Insurance Company, MetLife of Upstate New York failed to maintain and enforce a proper system of internal supervision in violation of its duty as a "controlling person" under 15 U.S.C. § 78t.

**DISCUSSION**

I. **Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber*, 648 F.3d at 104. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

II. **Plaintiff Fails to Plausibly Allege her Sixth Claim Against the MetLife Defendants and the Merritts for a Violation of 15 U.S.C. § 78j(b) and Rule 10b-5.**

Plaintiff's federal securities fraud claim implicates "a statutory and regulatory framework involving [15 U.S.C. § 78j(b)], Rule 10b-5, Federal Rule of Civil Procedure ("FRCP") 9(b) and the pleading standards required by the Private Securities Litigation Reform Act (the "PSLRA")." *Taylor v. Westor Capital Grp.*, 943 F. Supp. 2d 397, 400 (S.D.N.Y. 2013). Section 78j(b) declares it

> unlawful for any person, directly or indirectly, by the use of any means . . . of interstate commerce, . . . the mails, or . . . national securities exchange: [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

4

"Rule 10b-5, promulgated by the Securities and Exchange Commission to implement Section 10(b), more specifically delineates what constitutes a manipulative or deceptive device or contrivance." *Taylor*, 943 F. Supp. 2d at 401 (quoting *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999)). Under Rule 10b-5, it is

> unlawful for any person, directly or indirectly, . . . of interstate commerce, . . . the mails, or . . . national securities exchange, (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

To establish a violation of Rule 10b-5(a) and (c), a plaintiff must show "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Taylor*, 943 F. Supp. 2d at 401 (quoting *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005)). A plaintiff must specify "what manipulative acts were performed, which defendant performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue." *Id.* (quoting *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 425 (S.D.N.Y. 2006)) (quotation marks omitted). FRCP 9(b) further requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

As a threshold matter, the Court must address what cause of action Plaintiff's sixth claim alleges. There is apparent confusion among the parties—the MetLife Defendants' Motion to Dismiss argues that Plaintiff failed to state a claim under Rule 10b-5(b). ECF No. 17-1 at 16-18. Plaintiff counters that the MetLife Defendants misread the Complaint, and that it actually alleges a claim under Rule 10b-5, subsections (a) and (c). ECF No. 39 at 31. To complicate matters

5

further, the section of the Complaint alleging the sixth claim also states that the corporate MetLife Defendants violated 15 U.S.C. § 78t, seemingly alleging another, different claim. ECF No. 1 ¶ 160. Nonetheless, all of these potential claims fail.

"The plain language of Rule 10b-5 mandates that the proscribed schemes or acts be done 'in connection with the purchase or sale of any security.'" *Taylor*, 943 F. Supp. 2d at 402 (quoting 17 C.F.R. § 240.10b-5). "Further, the Second Circuit has long recognized that 'Rule [10b-5] impose[s] liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part.'" *Id.* (*Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984)).

"Typically, a plaintiff satisfies the 'in connection with' requirement when 'the fraud alleged is that the plaintiff bought or sold a security in reliance on misrepresentations as to its value.'" *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 96 (2d Cir. 2018) (quoting *In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953, 967 (2d Cir. 1993)). "A claim fails where the plaintiff does 'not allege that [a defendant] misled him concerning the value of the securities he sold or the consideration he received in return.'" *Id.* (quoting *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105, 108 (2d Cir. 1986)). "The purpose of . . . Rule 10b-5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be." *Chem. Bank*, 726 F.2d at 943.

Indeed, a plaintiff's claims will fail where the allegations "pertain[] not to the sale of the securities or the value of the securities themselves, but to the terms of the relationship between the

broker and the customer." *Taylor*, 943 F. Supp. 2d at 402 (quoting *Levitin v. PaineWebber, Inc.*, 933 F. Supp. 325, 329 (S.D.N.Y. 1996)) (dismissing Rule 10b-5 claim), *aff'd on other grounds*, 159 F.3d 698 (2d Cir. 1998); *see also Chase Manhattan Bank, N.A. v. Fidata Corp.*, 700 F. Supp. 1252, 1260 (S.D.N.Y. 1988) ("[C]ourts have held that no claim for relief is stated under 10b-5 by an allegation that the defendant failed to disclose its intent to breach fiduciary duties under state law [or] to convert the plaintiff's property . . . ."); *Korff v. Bank Julius Baer & Co.*, No. 88 Civ. 4569, 1990 WL 67771, at *3 (S.D.N.Y. May 14, 1990) ("Although plaintiffs' allegations may provide the basis for a claim of breach of fiduciary duty or breach of contract, they fall far short of providing the basis for a federal claim under . . . Rule 10b-5.").

Here, Plaintiff failed to plausibly allege that any wrongdoing by the MetLife Defendants and the Merritts was done "in connection with the purchase or sale of any security." Yes, Williams sold a security[4] to the Merritts as agents[5] for Hart. There are no allegations of fraud, however, directly involving the sale of the variable annuity to the Merritts. First, the allegation that Williams knew the annuity was not a suitable investment for Hart goes to a possible breach of fiduciary duty, not the fraudulent sale of securities. The allegation that Hart did not approve the annuity contract is equally unavailing—the Merritts executed the contract as Hart's agents under a seemingly proper power of attorney, so Williams did not need Hart's approval. Williams's receipt of commissions presents a possible motive to sell the annuity, but it does not connect the alleged fraud to the sale. It merely shows that Williams had a financial incentive to complete the transaction.

---

[4] Variable annuities are securities subject to regulation by the Securities Exchange Act. *See Ring v. AXA Fin., Inc.*, 483 F.3d 95, 99 (2d Cir. 2007).

[5] While the Complaint alleges that the 2010 Power of Attorney was forged, there are no allegations that it was improperly executed. Consequently, the Merritts had the power to execute a variable annuity contract on Hart's behalf, and the MetLife Defendants were obligated to accept the Power of Attorney unless they could provide reasonable cause not to. *See* N.Y. Gen. Ob. Law §§ 5-1504(1), 5-1514(3)(c)(6).

The language alleging that the acts of the MetLife Defendants and the Merritts constituted manipulative and deceptive devices and contrivances in violation of Rule 10b-5, a device, scheme, or artifice to defraud Hart by purchasing securities, and a course of business which operated as a fraud and deceit upon Hart is conclusory and meant to imitate Section 78j(b) and Rule 10b-5. It provides no factual basis to show that the MetLife Defendants or the Merritts defrauded Hart "in connection" with the annuity.

Plaintiff's allegations that Williams and the Merritts made false and fraudulent statements in documents used to purchase the annuity come closer to establishing a connection between the fraud and the purchase of a security. The allegations, however, are not sufficiently specific. *See, e.g.*, *In re Sina Corp. Sec. Litig.*, No. 5 Civ. 2154, 2006 WL 2742048, at *6 (S.D.N.Y. Sept. 26, 2006) ("Plaintiffs' allegations . . . do not specifically identify how or why any particular representations were misleading.").

To reiterate, Plaintiff plausibly alleges that the MetLife Defendants and the Merritts used the annuity *as a vehicle* to defraud Hart. Plaintiff does not plausibly allege, however, that Williams misrepresented the value of the annuity, its purpose, or its function, or that the sale of the annuity was inherently fraudulent, as courts within this Circuit require. Consequently, the MetLife Defendants' Motion to Dismiss Plaintiff's sixth claim is GRANTED, and the claim is DISMISSED.[6]

### III. The Court Declines to Exercise Jurisdiction over the Remaining State-Law Claims.

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of America Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)) (internal quotation marks omitted). The

---

[6] Because there was no violation of 15 U.S.C. § 78j or Rule 10b-5, the corporate MetLife Defendants cannot be held liable for a violation of 15 U.S.C. § 78t under its plain language.

"traditional values of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial." *Silver v. Entergy Nuclear Operations, Inc.*, No. 15-CV-1792 (CS), 2017 WL 5508387, at *10 (S.D.N.Y. Nov. 15, 2017) (quoting *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).

Here, because the Court dismissed the only federal claim in the Complaint, it declines to exercise jurisdiction over the remaining state-law claims. *See Taylor*, 943 F. Supp. 2d at 404 (declining to exercise jurisdiction over state-law claims after dismissing federal-law claims brought under Rule 10b-5).

## IV.     Amendment Would be Futile.

In her response to Defendants' Motions to Dismiss, Plaintiff asks for leave to amend the Complaint under Federal Rule of Civil Procedure 15(a)(2) if the Court "finds any causes of action insufficient." ECF No. 39 at 10. Under Rule 15(a)(2), the Court "should freely give leave [to amend] when justice so requires."

The Court, however, is not required to grant Plaintiff leave to amend if amendment would be futile, in that "it appears beyond doubt that the plaintiff can plead no set of facts that would entitle [her] to relief." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 312 (E.D.N.Y. 2017) (quoting *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).

Here, as a preliminary matter, Plaintiff has improperly filed her motion to amend. Under the Local Rules, a movant "must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion." Loc. R. Civ. P. 15(a). There is no proposed amendment of any kind available to the Court.

As a result, based on the information before the Court, "it appears beyond doubt that plaintiff can plead no set of facts that would entitle her to relief." *Moss*, 258 F. Supp. 3d at 312 (quoting *Milanese*, 244 F.3d at 110). Consequently, amendment would be futile and Plaintiff's purported motion to amend is DENIED.

## CONCLUSION

For the foregoing reasons, the MetLife Defendants' Motion to Dismiss the Complaint, ECF No. 17, is GRANTED, the Complaint, ECF No. 1, is DISMISSED, and the Motions to Dismiss for Phillips and WoodForest, ECF Nos. 5, 24 are DENIED AS MOOT. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: March 30, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court